Good afternoon, Your Honors. May it please the Court, Federico Reynal appearing for Charles Devon Fulton. If it suits Your Honors, I'm going to spend the majority of my time discussing the first two points of error raised in the brief. The first point of error raised is the unlawful and illegal seizure, search, and subsequent use of Mr. Fulton's cell phone and the text messages, images, and conversations that are contained at his trial. Let me ask you to express or identify the extent of your objections. It seems to me you were arguing both that the initial seizure was improper and that the waiting for nine days after seizures to get a search warrant was improper. Have I captured your objections? You have, Your Honor. So the extent—it took another year plus for the government to get into the cell phone, even after two different search warrants. That's not part of the issue before us, is it? That's correct, Your Honor. The issue that we're raising here is the extent that the warrantless seizure of the phone violated Mr. Fulton's Fourth Amendment rights. I think that if we look at the district court's opinion on the issue, it tends to miss the point and confuse the correct standard that we should be applying. If we look at the Supreme Court's decision in Riley, the question of whether a piece of personal or real property has been appropriately seized is determined in accordance with MacArthur v. Illinois and United States v. Place. It's not a question of whether the object was a searched incident to arrest. There's no seized incident to arrest exception that would be applicable in this case. Here, the Galveston Police Department went in executing a warrant for Mr. Fulton's arrest and to search for cocaine and the implements and instrumentalities of cocaine distribution, and then including scales, baggies, and other items that would commonly be used in the trade. There was no mention of a cell phone either in the affidavit or in the warrant itself. This was readily conceded by Officer Rourke at the time of the suppression hearing. You're saying the search incident to arrest exception normally doesn't allow you to seize something. I mean, don't you have to seize something first before you search it? Like the cigarette package in the Supreme Court case. You have to grab it, take it into your possession as law enforcement. Then the search incident to arrest it, you can actually look through and see that there's contraband in that cigarette box. Absolutely correct, Your Honor. But the distinction that I'm making is that in Riley, the Supreme Court said there's no search incident to arrest the cell phone, period. So the question is the seizure. How do we analyze whether the seizure was appropriate? And in U.S. v. Place and Illinois v. MacArthur, the Supreme Court instructs that this court and the district court needs to balance the interests of the government against the interests of the citizen. And there have been four particular areas that have been sort of pointed out as being the ones that should be looked at. Does your argument depend on the fact that it's not on him? There's this debate about how far away, different room. Or would you be saying the same thing if the cell phone was in his pocket? I think it's absolutely irrelevant, especially given the fact that it wasn't returned to him when he was discharged the following day. So there could be an argument, let's say, that the police, when they arrest a citizen, are going to, as a matter of course, take some of their stuff, their clothing, their wallet with them. But then those things would be returned at the time the person is discharged from custody. Here, the phone was seized as evidence. The district court said it was a seized incident to arrest. Our point is that doesn't really exist, isn't applicable here. What we should be looking at is Illinois v. MacArthur and U.S. v. Place. In those cases, they say you look at the duration that the item is kept away or kept without a warrant by the government, whether or not the government had consent to seize the item, the government's interest in holding the item, and then the magnitude of the interference. Here, the duration of the delay was nine days. Nine days the government had the citizen's cell phone without having a warrant or other legal authority to have it. They did not have consent to have his phone. So we next move on to what's the government's interest. In this case, we argue that the government's interest is low because it's speculative and it's not particularized as to the item. If we look at the warrant itself and we look at the cross-examination of Officer Rourke, he never creates a nexus between the cell phone and criminal activity. Basically, what Officer Rourke says is drug dealers tend to have evidence of drug dealing on their phone. That is applicable. That reasoning would be applicable to almost any crime. I mean, I think the term that the Supreme Court used in Riley is it would be a remarkably unimaginative police officer who couldn't articulate the idea that somebody would have evidence of their lifestyle or of the business that they engage in on their smartphone. We believe that the Constitution requires more. It requires a particularized suspicion that evidence of the crime would be found on the phone that's based on articulable facts. In this case, those were never adduced. So the duration was long. There was no consent. The government's interest in holding the phone was low and needs to be examined not with 20-20 hindsight as to what they eventually found on it but based on what they knew at the time. And finally, the magnitude of the intrusion on the citizen's privacy rights was very high. As the Supreme Court pointed out in Riley, smartphones do occupy a special area of privacy because they contain all the details of one's life. So assuming you're right that the Galveston police committed a constitutional violation, whether in seizing it in the first place, keeping it nine days, whatever, Fourth Amendment violation, what about the fact that the feds come in later, that federal agent has no idea what the Galveston police did to obtain this thing, where they obtained it, and he gets a search warrant because he knows they have the phone in Galveston custody. He gets a search warrant to search it. Then that's how it gets into the federal law enforcement, and they're eventually able to find the break-in of the phone and get the evidence. Why should there be a suppression remedy when it seems like the federal agent got a search warrant and did nothing wrong? I would disagree with Your Honor insofar as Agent Renison's knowledge of the investigation that had been going on into Mr. Fulton. I think the evidence was that Agent Renison worked with the Galveston police department, not at the time that they did the search warrant at Mr. Fulton's house, but certainly later. He was working with them. But he didn't know the – you think the warrant didn't cover the phone? I mean is there any evidence he saw the state warrant and would have known it didn't cover the phone and things like that? I don't know that – I think that the – I don't want to speak out of turn. I think that he references that there had been an earlier warrant, but I don't know that – I can say that he actually read it or looked at it. In any event, on the sort of the Leon good-faith issue, this would be an issue of first impression in this circuit as to undue delay. The Ninth Circuit has addressed the issue and resolved it in appellant's favor on that issue in a case called Songja Cha, and it's cited in the briefs, Your Honor. And the idea being that this is the type of error that will never tend to come before the court if the good-faith exception is allowed. In other words, this unconstitutional delay issue would never be the type that would come forward. I mean did the feds delay? I mean I thought you were challenging the state waiting nine days to get a warrant. You're absolutely right, Your Honor. I don't know that the feds would have delayed, but the item would never have been in custody had it not been for the unconstitutional behavior by the state. Well, let me ask the Galveston Police Department, as I understand the chronology, gave the phone to the FBI a little less than a month after the search, after the arrest, and the FBI did not get a warrant for another three weeks. Why is that delay irrelevant? I certainly don't believe that it is. I mean you're not focusing on it, and I'm going to ask you about the extent of your argument. I'm not trying to catch you, but does the good faith that Judge Costa is talking about, whether it's Massey or Leon or whatever the case may be, would it not be an issue that would look at delay as well? It would be. The record wasn't developed below. So the government did not call Agent Renneson to explain? That's the FBI agent. That's the FBI agent? That's the FBI agent. Had they called Agent Renneson, I would have cross-examined him, as I did Officer Roark. Officer Roark, in response to questions as to why he didn't get a warrant earlier, responded that he just didn't think it was urgent, that they had it because it was evidence. And that is at the record on appeal at 2249 to 2250. Agent Renneson, without having had his testimony, it's difficult to know what steps he took or didn't take and how quickly he took them. The government, at the time we moved to suppress, certainly did not raise Mr. Renneson's subsequent warrant as being sort of the saving factor in the case. But after the nine days, there is a state search warrant to say you can look into this phone, and they hadn't been able to accomplish that because they couldn't get through the password, right? That's correct, yeah. Shouldn't that go into the undue delay analysis that they had? It's one thing if you've been able to search it, see there's nothing there, of course give it back. You have some obligation there. But if you haven't achieved what the search warrant says you can do yet, wouldn't that factor into whether it's reasonable to keep holding the phone if you're still trying to get into it? For Agent Renneson? I guess for either. I mean, basically after the nine days. I think that the analysis for the state ends at the nine-day point, because at that point they do what they should have done on day one, which is get a warrant. Okay, so you have no complaint about the state after they have the warrant. In terms of Agent Renneson, the question is when he becomes aware that there is information on the phone, did he take the necessary steps in a timely manner, in a constitutional manner to get those? If the phone's already legally in the custody of the Galveston Police Department, raises the further question of how long they can keep it if they can't get into it, which were issues that were litigated. Quickly moving on to my second issue, sometimes things in briefs are stated very quickly and maybe they don't get as much attention as they deserve. I do want to take time to point out in this case that the defense requested Brady, Giglio, and Jenks material to be produced as to the complaining witnesses who were minors. That request was denied by the district court in this case, and the court took those items into chambers and said that they had been reviewed ex parte, and very little was ultimately produced to the defense. We are requesting that this court do a second line review on those documents to make sure that they don't contain Brady, Giglio, or Jenks. This is particularly important in this case because we were faced with the unwelcome prospect of trying a case where the government could lob bombs over a wall that we weren't allowed to penetrate in terms of discovery and in terms of cross-examination. Our request to have the juvenile adjudications of the complaining witnesses as well as the notes that were taken by the juvenile probation officer was denied, so we weren't able to develop cross-examination based on that. Additionally, we were prevented from cross-examining one of the complaining witnesses about an aggravated robbery arrest that she had, which prompted her to reach out to the agent. Our theory of the case here had been that the complaining witnesses, rather than being the employees or under the sway of the defendant, had in fact been independent contractors, and that no force, fraud, or coercion had been used. All right, counsel. Thank you. We'll hear from you again. Thank you. Good afternoon, and may it please the court. Andrew Gould for the United States. Mr. Fulton's appeal raises numerous issues, but in the end, none of them amount to reversible error. Indeed, with the sole exception of an invited error regarding a particular jury instruction, there was no error whatsoever, whether at trial or in the district court's denial of Mr. Fulton's suppression motion. The jury's guilty verdicts should stand, and the district court's judgment should be affirmed. Based on my friend's points of emphasis, I plan on doing the same, which is I'm going to actually talk first about the second issue, the confrontation issue, and then I'll discuss the suppression issue. But, of course, I'm happy to address any of the issues at the court's discretion. Let me begin very briefly on the confrontation issue. And starting first with the assertion that we just heard about, the Brady, Giglio, and Jinks information. This point was raised very briefly in, at least for purposes of appeal, I believe, in Mr. Fulton's statement of the case in which he requested that this court do a second look of those records. My friend just stated that the government was able to lob bombs. I think those were the terms. In terms of these records, the government never reviewed these records. In fact, we weren't entitled to under state law, and we made that point very clear to Judge Hanks. Under Pennsylvania v. Ritchie, which was discussed at length regarding these records, Mr. Fulton would have to make a showing first as to what these records would show, and then the district, beyond speculating what they might show in favor of this case. Mere speculation is not enough. And then, and only then, could the district court then do an in-camera review of those materials. The district court here essentially assumed that Mr. Fulton had made that showing because it did do an in-camera review. Our position was really that he just speculated as to what these records would show. We, the government, did not know what was in them, but neither did Mr. Fulton. And so the district court went in camera and reviewed those records. We — there's nothing that we had in our custody. They were in the custody of Faith Larson, who was the Galveston probation officer, who turned them over to the court. The government never saw these records. But what if the district court was wrong? If the district court was wrong, I mean, we're not able — I mean, I'm not able to tell you, standing here without looking at the records, what they would show. I mean, we can only take the district court at its word. He — Right, but I guess I'm trying — I was trying to — well, you're trying to argue that since the government didn't have this in its knowledge, it couldn't have a — it's not a ground for any error? I'm just trying to tie together what you're pointing out factually. Well, no, I think my — I think my point, Judge Costa, is simply that it's hard for me to stand here and, you know, defend and say there's absolutely nothing in those records. We take the district court at its word that he thoroughly reviewed them, did disclose certain materials involving some of the victims based on his review. Mr. Fulton has asked this court to review them. I suppose the court — they are — they do appear in the electronic record on appeal. We haven't seen them. They're sealed. But the court can access them. And so I suppose if this court were to deem the issue properly before the court, although I will add this. Again, this, to the extent it is an issue, it was raised in kind of one sentence in a statement of the case as opposed to a standalone issue. That's why we, the government, didn't really brief it. That is separate from the issue involving A.V. and her state charges and what Mr. Fulton wanted to cross-examine her about. And, again, our position, as we've explained in the brief, is that he has to show something beyond mere speculation that the government here, the federal government, could influence those proceedings. He did not make that showing. And, in fact, A.V. testified that she asked for a benefit and she didn't get anything. So there's nothing in terms of a confrontation issue. Mr. Fulton had an ability to question A.V. about her potential bias. He just didn't get the information that he wanted or the answer that he wanted. Let me focus — let me turn and focus on the suppression issue. The district court properly denied Mr. Fulton's suppression issue. The phone was lawfully seized. The nine-day delay between the seizure of the phone and obtaining a search warrant was not unreasonable. And even were this court to disagree with either conclusion or both conclusions, the good-faith exception would apply fully here. Beginning — there was discussion about the Riley case, the Supreme Court case. Riley involves a search incident to arrest of a cell phone, and that is where the Supreme Court held that when there is an arrest, a lawful arrest, the police can't simply just rifle through one's cell phone without getting a warrant. There's the famous line, get a warrant. Riley has no bearing here.  I mean, the phone was simply seized, and at that point, Officer Rourke didn't attempt to search the phone until first seeking a search warrant. He did exactly what the Riley court talks about. And to the extent my friend talks about Illinois v. MacArthur and United States v. place, those cases are about the delay issue, the nine-day delay. It's not about the initial seizure. So I think first — I mean, of course, this Court is free to jump straight to the good-faith exception if it wants. Our position is that there was no error whatsoever, that the phone was lawfully seized, and that the delay was not unreasonable. As to the lawful seizure, we do think it was — it was covered in the warrant. Absolutely, Mr. Fulton's right. The warrant did not use the term cell phones, but neither did the warrant in the Aguirre case. The Aguirre case, which is cited in the government's brief, simply referred to financial records and documents. And this Court held that, well, those are the — a cell phone is the functional equivalent of financial records and documents in the drug — in the drug trafficking context because cell phones as a mode of oral and written communication can be used for furthering those activities. So, too, here. You certainly may be right about Aguirre and its application. We'll have to decide that. But it still seems short-sighted not to identify cell phones within the warrant request itself, as opposed to having to rely on this sort of extension. Without question. I mean, I certainly agree that the better practice would have been to include the cell phone. If the cell phone had been written, obviously, in the warrant, we wouldn't be here having to make this argument. Our point is simply, given that this is the record that is before this Court, we think that Aguirre still supports it. Absolutely, we think that the best practice would be to include cell phones in it. And were we advising the Galveston Police Department, we probably would say, yes, you should change your warrant so that it's specifically included. That doesn't mean that the warrant does not meet the particularity requirement under the Fourth Amendment under cases like Aguirre. So, yes, I certainly agree with you that the better practice would have been to include that as a term. We still think it was a lawful seizure under the warrant. You also argue – Well, no, you're staying with that first issue. Why don't you go ahead? You also argue plain view, which requires that the object be incriminating, which we've interpreted to mean basically probable cause to believe it was used in criminal activity. And your argument is, look, drug dealers use phones. There's a probable cause that he was using this phone in drug trafficking, text messages, whatever. What about the other side's argument that there's basically no limit on that, that that would apply given the pervasive use of cell phones today? That would mean that cell phones could always be seized in plain view or under other similar standards. Respectfully, we think that's taking it a bit too far. It depends on the context. When we're in the context of drug trafficking, yes, we do think that based on the officer's experience and what he or she testifies at the suppression hearing as to his experience, his or her experience, that cell phones seen in plain view during an arrest for drug trafficking, that are associated with that defendant. Yes, we do think that categorically they can be seized, just leaving an exception depending on the testimony of the officer as to his or her experience. And here at ROA 2241, Officer Rourke, who is a ten-year veteran of the Narcotics Advice Division, said his experience is that drug dealers use their phones daily to commit these crimes. We're not saying that anybody walking down the street can be accosted and asked for their cell phone because it could be a potential instrumentality of a crime. We're referring to the specific drug trafficking context, and we do think it's met. And we do think that it is particularized based on, again, Officer Rourke's testimony about his experience with drug traffickers. That's what this Court sees often when, for example, reviewing a roving border patrol stop. I mean we look to an officer's experience as to probable cause or reasonable suspicion. If you finish your answer, Judge Costa, it looks like you're giving me time to ask my question. I wanted you to move on to the delay issue regarding the getting of the search warrant. Each side has offered up some factors from other cases, not necessarily from the Fifth Circuit. It sounds to me as if we may have to develop some sort of view as the right way to measure delay and what the considerations are. It does seem to me that the nine-day delay does suggest certainly a lack of urgency on the part of the Galveston Police Department and perhaps a lack of even awareness of the privacy interest in the general case law in this area. So give me your take on why nine days is not too long and what we ought to be looking at in making that determination. Right. Well, I do agree with my friend. I think that this is really an issue of first impression to this circuit. I believe it's the Howard case from 1993 of this Court is the only one that I could find addressing this delay point, and that's why we're talking about what all the circuits, how they coalesced around this test. The test is you weigh the defendant's possessory interest against the State's interest in the seizure. And it's a totality of the circumstances test. We agree with all the other courts that say there is no bright line. So we think it's impossible to say, for example, nine days categorically bad. We think that you have to look at all the circumstances, and that's why, you know, one court has said, for example, 90, I believe it's 90 minutes, may be unreasonable under some circumstances, whereas a 21-day delay may be reasonable. So we have to look to all the circumstances. Here we do not question and we have never questioned that Mr. Fulton has a possessory interest in his cell phone. We further agree with him that we'll even go a step further and say it's a heightened interest, you know, as opposed to say if we had seized a drug scale of Mr. Fulton just because of what is inside of his cell phone. But critically here, his possessory interest was weakened because he never saw its return during that time. And that is one of the circumstances that this Court must consider in weighing his possessory interest, is did he seek its return. And by the way, even if he did seek its return, that's not necessarily dispositive. In Burgard, the Seventh Circuit case cited in the government's brief, there the defendant did seek return of his phone promptly, didn't get it. There was a six-day delay, and yet the Seventh Circuit still held that the factors favored the government. Turning to the government side of the lecture, the government seized the phone based on probable cause of a crime. That is a probable cause that the phone was evidence of a crime. And actually, if you were to look carefully at these cases, all of these cases involved warrantless seizures of items. So if you agree with us, or excuse me, if you were to hold that the phone was actually seized pursuant to the warrant, that fact alone distinguishes this case from the others. But let's assume that you instead agree with us that it was a valid warrantless seizure. It's still based on probable cause. That favors the government. And then as to Judge Southwick, your questions about, you know, whether it seemed as if there was any urgency or not, we don't think the record is fully developed on this point. We don't think it's as — we don't think the testimony is as clear as my friend says. It is true, and the Court should look at the testimony at 2249 and 50, because there my friend is questioning Mr. Officer Rourke about, you know, you didn't see any urgency, and then that's the reason. And the exact quote that his response is, no semicolon, it was evidence. And there was no follow-up from that. We don't know what that — we don't know exactly what that means. Was he saying, no, I didn't see any urgency? What was he referring to that was evidence? We don't know. But let's assume for the sake of argument that this Court were to agree that he was negligent, that he should have acted faster. As the Seventh Circuit rightly stated in Burgard, police imperfection alone is not a reason to render a search, the delay in a search, unreasonable. And there, this is where the district court's factual findings at the end of its opinion are important, and specifically its factual findings, that there was no evidence of unjustified neglect, purposeful delay, or bad faith by Officer Rourke in the delay. That's where those come into play, and that's what differentiates this case from Song Cha, the Ninth Circuit case cited by my friend. That's a case involving systemic, deliberate negligence. If there was evidence that Officer Rourke just — that Officer Rourke was manipulating the time or just dragging his feet to trample on Mr. Fulton's rights, then certainly that would weigh in favor of it. But here there is no such evidence of that. And so we're simply looking at negligence, and that alone, you know, as Herring and the other Supreme Court cases talk about, that's not a reason for exclusion. You call it negligence. Maybe that's as good a word as any. It seems to me that what this record could support is that that particular officer, Galveston Police Department, however broadly, but at least that officer, did not see a need to get a warrant with any particular quickness. And if the record does support that, basically not recognizing a need, maybe that's negligence, maybe that's otherwise, do you think that does disqualify as long as there's nothing deliberate that doesn't really weigh that strongly? No, I think it — Your Honor, I do think it's a factor to consider, but I think you have to weigh it in concert with everything else. And again, here I think it matters Mr. Fulton's possessory interest in the phone and specifically what he did in seeking return. Had he — recall that at the suppression hearing, he himself said, I bonded out of custody that same day after he was arrested, back during the original seizure of the phone. So he could have sought return of the phone at any time during that. And that's not to necessarily say that the police would have released it, but the point is simply he could have. He did not. As a district court stated at the suppression hearing, there was no evidence that he ever sought the phone's return. So I do think you have to weigh that factor against if you were to find that officer work was negligent. But, Your Honor — I don't have the Federal rules in front of me. Isn't there a Federal rule of criminal procedure governing return of search warrant materials? If your house gets searched, you can file a motion for return. I don't have the exact rule in front of me, but I seem to recall there's — I think that's right, Your Honor, but I'm also not surestanding here today. But even were this court to hold that the seizure of the phone was unlawful or that the delay was unlawful, then the good-faith exception would apply. Because here there are two questions. First, did Agent Renneson, because Agent Renneson is the one — is ultimately the one who sought the warrant for which the evidence was obtained. Did Agent — would a reasonable officer in Agent Renneson's know that the prior conduct was categorically unconstitutional? And second, did Agent Renneson act in good faith? And addressing those in reverse order, he certainly acted in good faith. In his affidavit, he recounted the history leading up to his seizure of — leading up to how he received the phone and explained why he wanted it. But going to the first part, which I think is going to be the — would Agent Renneson have known that this was categorically unconstitutional? I don't think so. I don't think so based on — if we're just looking at the delay issue, based on the absence of case law on it and all the factors to consider. And also, Agent Renneson could have considered the fact that a second judge issued the search warrant for the phone. And if the delay was so categorically unreasonable that it violated Mr. Fulton's rights, Agent Renneson could have thought, well, then that second warrant would have been denied. So we think that even if the court were to find Mr. Fulton's Fourth Amendment rights violated, the good faith exception would apply. If there are no further questions, we ask that you affirm the judgment of the district court. Thank you. All right, sir. Thank you, Your Honor. I want to start in by focusing on this functional equivalency language. That's the Aguirre case that was cited by my colleague. If they were able to lawfully seize the phone pursuant to that first warrant, then they were lawfully able to search the phone pursuant to the first warrant. Your Honors can review the warrant. I don't believe that it passes muster as a warrant that allows you to search a cell phone under the Supreme Court's precedent or this court's precedent or state court precedent. And I don't think Mr. Rourke, Officer Rourke, believed that that warrant allowed him to seize that phone or to search it. And that's how it was documented in his report. In Aguirre, when they're talking about functional equivalency, the warrant in that case allowed the officers to seize, among other things, address books. And telephone logs. And all sorts of things that one would expect to find inside a cell phone. In this case, the warrant says officers can seize cocaine, any and all implements and instruments used in the commission or possession, distribution, or manufacturing of a controlled substance in violation of Texas Health and Safety Code, Chapter 481, and property and items constituting evidence of the above, including but not limited to scales, baggies, ledgers, U.S. currency, measuring devices, and other items containing residue. Of course, they want to rely on implements and instruments. What's wrong with that? This court's opinion in United States v. Cook, implements and instruments is an overly broad category of items. There is a particularity clause. This court in United States v. Cook says that this court can sever out or that the district court can sever out overbroad clauses and still allow the other items to be used in evidence. In other words, that it doesn't render the warrant invalid. But the instruments and instrumentalities language by itself is overbroad. In terms of evaluating the initial seizure of the phone and the delay, our position is that governing the seizure, and this is in the dicta and Riley discussing the seizure of the cell phones in those cases, that the appropriate analysis is under the Illinois v. MacArthur case and United States v. Place. In United States v. Place, the Supreme Court found that an eight-hour delay in obtaining a warrant to search the luggage of a passenger was too long. So that gives us context on what could be an earlier limit. The language that my learned friend discussed comes from about 90 minutes may be too long and 21 days may be enough time comes from United States v. Laced, which is a case that deals with and points to the four factors that I mentioned earlier, the duration of the delay, consent of the owner, the government's interest. The government brought up the idea of border stops. I love the fact that they bring that up. Brignone-Ponce, U.S. Supreme Court opinion, discusses border stops and the fact that the officers who stop the vehicle need to have reasonable, particularized suspicion. It's the same thing. If we look at United States v. Place and Illinois v. MacArthur, the jurisprudence draws from Terry stops. So in this case, there is no probable cause for the phone. There is no probable cause for the phone when the officer goes into that house. He has nothing in his affidavit, in his testimony that he ever saw that phone or any other phone ever be used for purposes of drug dealing. At most, he has a reasonable suspicion. But based upon what? Upon the idea that drug dealers keep private information on their cell phones? Have you seen any cases since Riley that say, in line with your view, that you now can't even seize the phone if it's on the person when you arrest them? I think, Your Honor, that you can seize the phone. But the analysis has to be how long it has to be. How long do you keep it? That's what you think the issue is. Yeah. How long do you? Well, first, you have to have some reasonable, particularized suspicion as to the phone. You can't just take the phone. But if you have some reasonable, particularized suspicion, you can take the phone. But how long you keep it depends on the strength of that reasonable, particularized suspicion. Thank you very much, Your Honor. All right, counsel. I appreciate both of your arguments. We'll take a brief recess.